MANISH KUMAR (CSBN 269493)
U.S. Department of Justice
Antitrust Division
450 Golden Gate Avenue
Box 36046, Room 10-0101
San Francisco, CA 94102
manish.kumar@usdoj.gov
Telephone: (415) 934-5300

Attorney for the United States

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DOUGLAS DITMER,<br><br>Defendant. | Case No. CR 4:12-00448 PJH<br><br>**UNITED STATES' SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD DEPARTURE PURSUANT TO U.S.S.G. §5K1.1**<br><br>Date: December 1, 2017<br>Time: 9:00 a.m.<br>Court: Hon. Chief Judge Phyllis J. Hamilton |

The United States respectfully requests that this Court sentence defendant Douglas Ditmer to (1) serve five months of custody, based on the government's motion for a substantial-assistance downward departure of 60 percent from the low end of the applicable Guidelines range; (2) serve three years of supervised release; and (3) pay a criminal fine of $7,500, a $200 special assessment, and restitution in the amount of $91,144.  This sentence is consistent with the parties' Fed. R. Crim. P. 11(c)(1)(A) and (B) plea agreement.

/ /

/ /

/ /

# BACKGROUND

Defendant Douglas Ditmer is a real estate investor who participated in the bid-rigging conspiracies at the Alameda and Contra Costa foreclosure auctions between June 2007 and January 2011.  Presentence Report (PSR) ¶ 18.  Defendant invested in residential properties with John Shiells and Miguel De Sanz, both defendants in the related cases.  Sharing equally in acquisition costs and profits, defendant and his partners have purchased, renovated, and resold foreclosure properties since the early 2000s.  *United States v. Florida, et al.*, Case No. CR 14-582 PJH (N.D. Cal.), Trial Tr. vol. 2, Doc. No. 392, 605-06.  Defendant first learned of collusion at the foreclosure auction as a client of Al Florida during the 1990s.  *Id.* at 624-25.

In total, defendant personally participated in approximately 55 rigged auctions during the conspiracy period, purchasing properties worth approximately $2.9 million.  He was owed bid-rigging payoffs, which he shared with his partners, in the amount of $91,144.  *See* PSR ¶ 18; Plea Agreement ¶ 11.

When questioned by the FBI at the beginning of the investigation, defendant falsely denied participating in rounds.  PSR ¶ 16.  He also destroyed a small number of round records before receiving the advice of counsel.  The underlying information was recovered from other sources.  *Florida II* Trial Tr. vol. 2, 637-38.

Since then, defendant has cooperated fully and truthfully in the government's investigation, as discussed further below.  Defendant entered original guilty pleas to two counts of mail fraud and two counts of bid rigging in June 2012.  In October 2016, those pleas were withdrawn by stipulation, defendant entered a guilty plea to the bid-rigging counts only pursuant to a revised plea agreement, and the mail fraud counts were dismissed.  Minute Entry, Doc. No. 26.

//
//
//
//
//

# ARGUMENT

## A. Sentencing Guidelines Calculations

### 1. Criminal History

In Paragraph 12 of the Plea Agreement, the parties agree that defendant's Criminal History Category is determined by the Court. The PSR calculates defendant's Criminal History Category as I, since he has no prior criminal history. The United States agrees. PSR ¶ 38.

### 2. Offense Level

The PSR calculates the total offense level as 13, consistent with the plea agreement. PSR ¶ 25. This calculation includes a one-level increase to the base offense level of 12 for conduct involving the submission of non-competitive bids, a two-level increase for a volume of commerce exceeding $1 million, and a downward reduction of two levels for acceptance of responsibility. U.S. Sentencing Guidelines Manual ("U.S.S.G.") §§2R1.1(b)(1) & (b)(2)(A), 3E1.1(a) & (b) (U.S. Sentencing Comm'n 2010).

Under the Guidelines, an offense level of 13 and Criminal History Category of I results in a sentence ranging from 12 to 18 months of imprisonment.

### 3. Fine and Restitution

The PSR calculates a fine range of $29,702 to $148,510, which is consistent with the plea agreement. PSR ¶ 71; U.S.S.G. §2R1.1(c)(1) (fine range shall be from one to five percent of the volume of commerce). In Paragraph Nine of the plea agreement, the government agrees to recommend a fine between $7,500 and $75,000, which was the fine range in the original plea agreement. Based on his agreement to pay restitution and the substantial legal fees defendant incurred while cooperating in the investigation, the government recommends a $7,500 fine. The parties have agreed in Paragraph 11 of the plea agreement that defendant shall pay restitution in the amount of $91,144.

## B. Basis for Downward Departure for Substantial Assistance

Pursuant to Section 5K1.1 of the Guidelines, the government moves for a downward departure based on defendant's substantial assistance to the investigation. The government recommends a 60 percent reduction, resulting in a sentence of approximately five months. This

is the government's highest recommendation for substantial assistance, reflecting the extraordinary cooperation provided by defendant in the investigation and prosecution of these cases over several years.

The first consideration is the timing of defendant's decision to plead guilty and cooperate. Defendant agreed to plead guilty relatively early in the investigation in 2012, well before his coconspirators—including his business partners—were indicted by the grand jury. Defendant's plea thus had an important effect on the dozens of coconspirators who subsequently pleaded guilty and cooperated in the investigation.

The government's recommendation is also based on the extent and value of the information provided by defendant during the investigation. Defendant sat for seven debrief interviews with the government (in addition to trial preparation meetings). During those interviews, defendant provided corroborating information regarding the operation of the conspiracy, authenticated various records of the rounds and payoffs that he produced to the grand jury, and provided an account of various subjects' conduct in furtherance of the conspiracy.

Finally, the downward departure recommendation reflects the extensive trial testimony provided by defendant in the prosecution of the *Florida I*; *Florida II*; *Marr, et al.*; and *Victor Marr* trials. He also had initial trial preparation meetings with the prosecution teams for the *Guillory* and *Joyce* trials, though he was not called as a witness. As the Court is aware, defendant's trial testimony was a highly probative component of the government's case-in-chief and was credible, accurate, and reliable. Defendant described the operation of the bid-rigging conspiracies and his participation therein truthfully and without equivocation. This testimony also provided the foundation for several documentary exhibits admitted at trial. The summary charts and demonstratives introduced through defendant reflected many hours of preparations during which he carefully reviewed and summarized his partnership's business records for hundreds of transactions. Throughout the pendency of the four trials, defendant consistently made his best efforts to assist the government.

For these reasons, a 60 percent downward departure for substantial assistance to the investigation and prosecution of these cases is appropriate.

**C.     Sentencing Recommendation**

The government's recommendation of five months is reasonable and not greater than necessary in light of the factors articulated in 18 U.S.C. § 3553. The most compelling factors weighing in favor of the recommendation are the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and afford adequate deterrence to future bid-rigging offenses and white-collar crime generally, as the government has argued in the related cases. Defendant and his partners illegally profited from the rigged auctions they participated in, both by receiving payoffs and purchasing several million dollars' worth of properties at discounted prices through suppressed bidding at the public auctions.

However, an assessment of the history and characteristics of defendant should take into account certain mitigating factors previously identified by the Court for similarly situated individuals. These factors include defendant's early decision to accept responsibility and cooperate in the investigation, his willingness to pay restitution, and his status as a first-time offender. For the reasons discussed above, the record demonstrates that defendant has gone to great lengths to accept responsibility and make amends for his crimes. While the government is recommending custody here, as it has in all the related cases, these factors have led the Court to impose probationary sentences for other defendants. These factors apply with equal if not greater force to defendant Ditmer.

**CONCLUSION**

For the foregoing reasons, the United States respectfully requests that this Court sentence defendant Douglas Ditmer to (1) serve five months of custody; (2) serve three years of supervised release; and (3) pay a fine of $7,500, a $200 special assessment, and restitution in the amount of $91,444.

Dated: November 24, 2017                                    Respectfully submitted,

/s/ MANISH KUMAR
United States Department of Justice
Antitrust Division

US' SENT'G MEMO.                                    5
No. CR 12-00448 PJH